```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

LEONEL HEBERT                                 CIVIL ACTION

VERSUS                                        NO: 07-2218

LOYOLA UNIVERSITY OF NEW                      SECTION: "A" (4)
ORLEANS
```

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 21)** filed by defendant Loyola University New Orleans ("Loyola"). Plaintiff Leonel Hebert opposes the motion. The motion, set for hearing on April 30, 2008, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

**I.   BACKGROUND**

Leonel Hebert ("Plaintiff") is a former employee of Loyola University New Orleans ("Defendant"). Plaintiff was employed as a store keeper. Plaintiff's employment was terminated on December 31, 2005, allegedly due to financial constraints following Hurricane Katrina. Plaintiff filed this lawsuit contending that in the course of his employment with Defendant he was subjected to age discrimination. Plaintiff contends that he

1

is 62 years old, that he was replaced by "a young employee," and that the reasons given for his discharge were not true. Plaintiff also alleges that he was discharged in violation of the Family Medical Leave Act ("FMLA") because at the time of his discharge he was under the care of a medical doctor and had been placed on sick leave.

Loyola moves for summary judgment on both of Plaintiff's claims.  Loyola argues that Plaintiff does not even present a prima facie case for age discrimination because Loyola did not hire a replacement for Plaintiff much less a younger one. Regarding the FMLA claim, Loyola contends that Plaintiff had not invoked the protections of the Act because he did not submit the required forms, and that he has offered no evidence to suggest that he was suffering from a "serious health condition" at the relevant time.

In opposition, Plaintiff states that if allowed to proceed to trial he will show that age played a factor in his termination.  Regarding the FMLA claim, Plaintiff contends that Loyola violated federal regulations by *inter alia* failing to inform him that he would be terminated if he did not complete and return the FMLA forms that Loyola provided and by failing to give him fifteen days to do so.

II. **DISCUSSION**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

   **A.   *ADEA Claim***

Under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 1999 & Supp. 2007).  Under the mixed-motives analysis or modified McDonnell-Douglas approach,[1] a plaintiff must first demonstrate a prima facie case of discrimination.  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  To establish a prima facie case of age discrimination a plaintiff must show that 1) he was discharged, 2) he was qualified for the position, 3) he was within the protected class at the time of the discharge, and 4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.  Id. (quoting Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5th Cir. 2003)).

---

[1] A "mixed motives" case arises when an employment decision is based on a mixture of legitimate and illegitimate motives. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004) (quoting Louis v. E. Baton Rouge Parish Sch. Bd., 303 F. Supp. 2d 799, 801-04 (M.D. La. 2003)).  This case clearly presents a "mixed motives" situation because Plaintiff does not dispute that he was terminated as part of a broader workforce reduction following Hurricane Katrina.  His contention is that age was a motivating factor in the decision to terminate him.

4

After the plaintiff has met his four-part prima facie case, the defendant must then articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff. <u>Rachid</u>, 376 F.3d at 312. If the defendant meets this burden of production then the plaintiff must offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but instead is a pretext for discrimination, or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. <u>Rachid</u>, 376 F.3d at 312 (quoting <u>Rishel v. Nationwide Mut. Ins. Co.</u>, 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003)). "If the plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden plaintiff prevails." <u>Id.</u> (quoting <u>Mooney v. Aramco Serv. Co.</u>, 54 F.3d 1207, 1217 (5th Cir. 1995)).

Plaintiff was terminated at age 62 and there is no dispute that he was qualified for the position at the time of the termination. Thus, the first three elements of a prima facie case of age discrimination are satisfied. The fourth element presents a problem, however, because the undisputed evidence

demonstrates that Loyola did not *replace* Plaintiff with a younger employee. Lloyd Leblanc was Plaintiff's former co-worker in the Loyola storeroom in Loyola's Physical Plant. (Rec. Doc. 21, Exh. B). Leblanc and Plaintiff were the only two employees who worked in the storeroom prior to Katrina. After Katrina, Leblanc, who is 55 years old, returned to work in the storeroom in November 2005. (Id.). Leblanc states that at all times since Katrina he has been the only person working in the storeroom and that no one has been hired to replace Plaintiff. (Id.).

Charles Marshall was Plaintiff's direct supervisor at Loyola. (Rec. Doc. 21, Exh. D). Marshall states that all physical plant employees who did not return to work by November 28, 2005, were terminated and that no one has been hired to replace Plaintiff. (Id.). Plaintiff did not return by that date. Marshall also states that Paul Fleming, his direct supervisor who is 64 years old, had expressed to him on several occasions that he preferred having older workers in the plant because they tended to be more stable and dependable. (Id.).

In the termination letter sent to Plaintiff, the president of the university states that a work force reduction was necessary in light of financial constraints following Katrina. (Def. Exh. L). The letter states that Plaintiff was being terminated as a result of that workforce reduction.

Plaintiff's inability to dispute any of the foregoing evidence demonstrates that he cannot establish a prima facie case by pointing to a younger employee that replaced him.  Moreover, the record contains no evidence to even remotely suggest that Plaintiff was otherwise discharged because of his age or that his age played any part in the decision to terminate him.

Assuming *arguendo* that Plaintiff has established a prima facie case of age discrimination, his claim nevertheless fails because Loyola has offered a plausible, legitimate, non-discriminatory reason for its decision to terminate him, i.e., that Plaintiff did not return to work by November 28, 2005, as required, and that Loyola implemented a reduction in workforce following Katrina.  Plaintiff has offered no evidence to suggest that this reason is not true, or that even assuming its truth, that age was a motivating factor in the decision to terminate his employment.  Loyola is entitled to judgment as a matter of law on the ADEA claim and the motion for summary judgment is GRANTED as to this claim.

    **B.**   **_FMLA Claim_**

The FMLA entitles employees to take reasonable leave for approved medical reasons.  Urban v. Dolgencorp, Inc., 393 F.3d 572, 574 (5th Cir. 2004) (citing § 2601(b)(2)).  An eligible employee may take a total of 12 workweeks of leave during a 12-

7

month period in connection with "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  Id. (quoting § 2612(a)(1)(D)).

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition" that involves inpatient care or continuing treatment by a health care provider.  Lubke v. City of Arlington, 455 F.3d 489, 494 (5th Cir. 2006) (quoting 29 U.S.C. § 2611(11)).  A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

>    (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

>    (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

(ii) Any period of incapacity due to pregnancy, or for prenatal care.

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

>    (A) Requires periodic visits for treatment by a health care

>  provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
>  (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
>  (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

(iv) A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

(v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

29 C.F.R. § 825.114. The record evidence demonstrates that subpart (i) supra is the sole provision that could potentially apply in this case.

An employer may require that a request for FMLA leave be supported by a certification issued by the employee's health care provider . See 29 U.S.C.A. § 2613(a) (West 1999). A certification is sufficient if it states 1) the date on which the serious health condition commenced, 2) the probable duration of the condition, 3) the appropriate medical facts within the

9

knowledge of the health care provider regarding the condition, and 4) a statement that the employee is unable to perform the functions of the employee's job position.  Id. § 2613(b).

When the leave is foreseeable and at least 30 days notice has been provided, the employee should provide the medical certification before the leave begins.  29 C.F.R. § 825.305(b). When this is not possible, the employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts.  Id.  At the time the employer requests certification the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification.  Id. 825.305(d).

Turning now to the case at hand, Hebert evacuated to Houston, Texas to stay with his daughter in the aftermath of Hurricane Katrina.  On or about November 7, 2005, Plaintiff spoke to Marshall, his direct supervisor, who told him that all employees were to report back by November 7, 2005.  (Def. Exh. A, Pla. depo., at 33).  Plaintiff, who had lost his Chalmette home in the storm, expressed concerns about housing.  Marshall offered

Plaintiff a cot in the hallway. (Id. at 33). Loyola continued to pay its employees, including Plaintiff, through December 31, 2005, regardless of work status.

Plaintiff testified that shortly after his conversation with Marshall he was hospitalized because he had blacked out at the dining room table. Plaintiff, who had an existing heart condition, had his physician, Dr. Nassar, write a letter stating that Plaintiff would be restricted from driving for six months and that Plaintiff was being referred to an electrophysiologist.[2] (Def. Exh. G). Plaintiff forwarded this letter to his immediate supervisor Marshall. The record also contains a "Work/School Form" from Dr. Hariharan, Plaintiff's cardiac electrophysiologist. (Def. Exh. H). Dr. Hariharan indicated on the form that Plaintiff could return to work fulltime as of 12/14/05 with "no driving or operating tools/machinery until that time." (Id.). Plaintiff did not recall sending this letter to anyone at Loyola. Although neither physician told Plaintiff that he could not work, Plaintiff contends that he had no way to get back to New Orleans. (Pla. Depo. at 76).

Eventually Plaintiff spoke with Leona Stampley in the Human

---

[2] Plaintiff explained in his deposition that the electrophysiologist is the physician who monitored his pacemaker.

Resources Department at Loyola regarding FMLA leave. The record contains a letter dated November 23, 2005, from Stampley explaining that the FMLA would provide 12 weeks of protected leave for employees with a serious health condition *if approved*. (Def. Exh. J). The letter was accompanied by several certification forms to be completed by Plaintiff's physicians. The letter states that the forms are to be returned by December 8, 2005. (Def. Exh. J).

Plaintiff testified that he did receive Stampley's letter and the certification forms. Although Plaintiff did not recall the exact date that he received the packet, he did recall that it arrived approximately two days before he received his termination letter, which was dated December 8, 2005. (Pla. Depo. at 99; Def. Exh. L). Plaintiff also believed that the envelope contained an incorrect zip code for his daughter in Houston. The termination letter advised that Plaintiff's job was being eliminated in the aftermath of Katrina as part of a reduction in workforce. Employment was to terminate effective December 31, 2005. (Def. Exh. L).

Plaintiff admits that he never returned the forms to Loyola and that he never attempted to have his treating physicians complete the medical certifications necessary for FMLA leave.

(Pla. depo. at 97-99). Plaintiff testified that he called Stampley after receiving the termination letter to advise that he was still working on the FMLA documentation but that he was forced to leave a message. Plaintiff testified that the message was simply "please call me back." (Pla. depo. at 101). Plaintiff did not receive a call back and he made no other attempt to contact Loyola about FMLA leave. Plaintiff contends that no one ever told him that he would be fired for failing to report for duty at the storeroom or for failing to return the FMLA forms.

    Based on the foregoing the Court is persuaded that Plaintiff was not fired in violation of the FMLA. Plaintiff did not return the required medical certification forms to Loyola. The letter from Dr. Nassar that Plaintiff had previously sent to Loyola contained very little information and was certainly not sufficient to put Loyola on notice that Plaintiff was suffering from a serious health condition. The letter only precluded Plaintiff from driving and Plaintiff admitted in his deposition that he had been required to drive as part of his job only one time in 19 years. (Pla. depo. at 74, 138). The letter contains none of the information listed in § 2613(b), which describes sufficient certification.

Plaintiff contends that he was never informed that the Nassar letter was deficient but Stampley's subsequent letter is clear in that FMLA leave is subject to approval and that the medical certification forms were required.  Plaintiff's failure to complete the forms deprived Loyola of the opportunity to determine whether Plaintiff was entitled to FMLA leave.  See Greenwell v. State Farm Mutual Auto. Ins. Co., 486 F.3d 840, 843 (5th Cir. 2007) (quoting 29 C.F.R. § 825.208(a)(1)).

Plaintiff contends that he was denied the 15 days that the regulations mandate for being allowed to return medical certifications because he received the forms just a few days before the termination letter arrived.  Plaintiff cannot establish prejudice from this lapse because he completely abandoned his attempts to request FMLA leave once he received the December 8, 2005, termination letter.  Plaintiff's termination was to be effective December 31, 2005, yet he exercised no diligence in obtaining an extension to submit the forms. Plaintiff called Stampley once but he did not leave a message of any substance and when his phone call was not returned Plaintiff simply let the matter drop and allowed the termination to become effective.  Plaintiff's argument would have greater weight had he attempted to exercise his rights to the 15 day period only to be terminated for failing to timely return the certifications.

14

Unfortunately, Plaintiff chose not to return the forms at all.

Plaintiff also points out that the FMLA regulations require that the employer advise an employee of the anticipated consequences of an employee's failure to provide adequate certification.  Plaintiff's termination was not a *consequence* of failing to return the FMLA forms.  As noted above, the undisputed record evidence suggests that Plaintiff was terminated as part of a work force reduction in the aftermath of Katrina and that he, as opposed to his co-worker Lloyd Leblanc, lost his job because he did not report for duty by the required date.  The FMLA would have merely given Plaintiff a 12 week respite during which he would not have been subject to the termination that was otherwise scheduled to take place.  Moreover, Plaintiff knew as of December 8, 2005, that he was being terminated effective December 31, 2005, he knew that FMLA leave was one potential avenue to avoid termination, even if temporarily, and he knew that FMLA leave was subject to approval after the forms were returned.  Plaintiff did not pursue that avenue and he was terminated as planned.  Loyola is entitled to judgment as a matter of law on the FMLA claim and the motion for summary judgment is GRANTED as to this claim.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec.**

15

**Doc. 21)** filed by defendant Loyola University New Orleans is GRANTED. Plaintiff's complaint is dismissed.

May 23, 2008

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE